IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARK LEVY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-517 (GMS) |
| | ) | |
| ROBERT J. THERRIEN  and BROOKS | ) | |
| AUTOMATION, INC., | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT ROBERT J. THERRIEN'S REPLY MEMORANDUM
### IN FURTHER SUPPORT OF HIS MOTION TO DISMISS

POTTER ANDERSON & CORROON LLP
Arthur L. Dent (#2491)
Brian C. Ralston (#3770)
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, Delaware 19801
(302) 984-6000
Email:  adent@potteranderson.com
        bralston@potteranderson.com

*Attorneys for Robert J. Therrien*

OF COUNSEL:

MINTZ LEVIN COHN FERRIS GLOVSKY
 & POPEO, P.C.
R. Robert Popeo
John F. Sylvia
Joseph P. Messina
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000

Dated:  November 30, 2006
764855

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ............................................................................ ii

INTRODUCTION ......................................................................................... 1

ARGUMENT ................................................................................................. 2

I.     BECAUSE THERRIEN'S SECURITIES TRANSACTIONS WERE
DISCLOSED, PLAINTIFF'S RELIANCE ON *LITZLER* AND
*WHITTAKER* IS MISPLACED ........................................................... 2

II.    PLAINTIFF IS NOT ENTITLED TO RELY ON EQUITABLE
TOLLING IN ANY EVENT BECAUSE PLAINTIFF ONLY
BECAME A BAI SHAREHOLDER YEARS AFTER THE
STATUTE OF LIMITATIONS HAD EXPIRED ............................................ 3

CONCLUSION ............................................................................................... 7

TABLE OF AUTHORITIES

FEDERAL CASES

PAGE

*Baldwin County Welcome Ctr. v. Brown,*
    466 U.S. 147 (1984)............................................................................................4

*Becton Dickinson and Co. v. Wolckenhauer,*
    215 F.3d 340 (3d Cir. 2000)...........................................................................5

*Bowers v. Transportacion Maritima Mexicana,*
    901 F.2d 258 (2d Cir. 1990).............................................................................5

*Cetel v. Kirwan Fin. Group,*
    460 F.3d 494 (3d Cir. 2006)............................................................................4

*Corcoran v. New York Power Auth.,*
    202 F.3d 530 (2d Cir. 1999)............................................................................5

*E.I. DuPont De Nemours and Co. v. Millennium Chems., Inc.,*
    1999 WL 615164 (D. Del. Aug. 2, 1999) ............................................................5

*Kronisch v. United States,*
    150 F.3d 112 (2d Cir. 1998)............................................................................5

*Litzler v. CC Invs., L.D.C.,*
    362 F.3d 203 (2d Cir. 2004)........................................................................2, 3

*Mathews v. Kidder, Peabody & Co.,*
    260 F.3d 239 (3d Cir. 2001)............................................................................4

*New Castle County v. Halliburton Nus Corp.,*
    111 F.3d 1116 (3d Cir. 1997).........................................................................4

*Oshiver v. Levin, Fishbein & Berman,*
    38 F.3d 1380 (3d Cir. 1994)............................................................................5

*Seitzinger v. Reading Hosp. and Med. Ctr.,*
    165 F.3d 236 (3d Cir. 1999)............................................................................4

*Whittaker v. Whittaker Corp.,*
    639 F.2d 516 (9th Cir. 1981) ........................................................................2, 3

## OTHER AUTHORITIES

15 U.S.C. § 78p(a)(1) ..........................................................................................3

15 U.S.C. § 78p(b) ..............................................................................................2

SEC Rule 16a3(f)(1)(i) ........................................................................................2

SEC Rule 16b-6 ...................................................................................................3

Defendant, Robert J. Therrien (hereafter, "Therrien") respectfully submits this Reply Memorandum In Further Support of His Motion to Dismiss.

INTRODUCTION

Plaintiff's Answering Brief in Opposition to Defendants' Motions to Dismiss (hereafter, "AB") raises two interrelated, yet flawed, arguments. First, Plaintiff contends that dismissal is inappropriate because a factual dispute exists regarding whether Therrien's 1999 option exercise constituted a non-exempt purchase of a security. AB at 11-12. Second, Plaintiff asserts that Therrien's purported failure to disclose this "purchase" tolled the applicable two-year statute of limitations because Plaintiff was not able to discover the true nature of Therrien's transaction until Brooks Automation, Inc. (hereafter, "BAI") filed an amended Form 10-K in July, 2006. *Id.* at 13-14. Neither argument withstands scrutiny.

For starters, there is no dispute that Mr. Therrien filed a Form 5 <u>in 1999</u>, disclosing his option exercise and a Form 4 in 2000, disclosing his sale of BAI stock. The only issue raised by BAI in the amended Form 10-K is <u>whether</u> Mr. Therrien should have been permitted to exercise the option he undisputedly exercised. The resolution of that issue, however, has no bearing on Plaintiff's § 16(b) claim.

More importantly, Plaintiff's tolling claim is belied by Plaintiff's own conduct. Under Plaintiff's theory, "until the Amended 10-K was filed, public shareholders could not have known the facts giving rise to the underlying claim of this action." AB at 14. Yet, Plaintiff saw fit to purchase a single share of BAI stock on June 8, 2006, and made demand on BAI on June 16, 2006. *See* Exhibit A to AB at ¶1; Exhibit A to the Opening Brief in Support of Defendant Brooks Automation, Inc.'s Motion to

Dismiss. The amended Form 10-K, of course, was not filed until July 31, 2006. Because the equitable tolling doctrine does not sanction such opportunistic litigation, Therrien's Motion to Dismiss should be granted.

ARGUMENT

I.   BECAUSE THERRIEN'S SECURITIES TRANSACTIONS WERE DISCLOSED, PLAINTIFF'S RELIANCE ON *LITZLER* AND *WHITTAKER* IS MISPLACED

Plaintiff does not contest that, absent tolling, his claim would be barred by § 16(b)'s two-year statute of limitations. 15 U.S.C. § 78p(b). In an effort to sidestep this hurdle, Plaintiff cites to *Litzler v. CC Invs., L.D.C.*, 362 F.3d 203 (2d Cir. 2004) and *Whittaker v. Whittaker Corp.*, 639 F.2d 516 (9th Cir. 1981), and asserts that "[a]n insider's failure to disclose covered transactions tolls the two year limitations period for suits under § 16(b) to recover profits connected with such a non-disclosed transaction." P's Opp. at p. 13 (emphasis added). Plaintiff's reliance on these decisions is misplaced. As discussed in his Opening Brief, Therrien's exercise of an option in 1999 was exempted by SEC rule from those "covered transactions" for which recovery may be sought under § 16(b). *See* Therrien's Opening Brief ("TOB") at 5-7.

Specifically, SEC Rule 16b-6(b) (17 C.F.R. § 240.16b-6(b)) provides that "[t]he closing of a derivative security position as a result of its exercise or conversion shall be exempted from the operation of section 16(b) of the Act . . . ." As stated in BAI's amended Form 10-K, filed on July 31, 2006 -- the document relied on by Plaintiff as the basis for his argument that the transaction at issue was a covered transaction -- "we [BAI] have concluded he [Therrien] *was permitted to exercise [the option] in November 1999* despite its expiration in August of 1999. This transaction was previously accounted

2

for and disclosed as a loan by the Company to Mr. Therrien for the purpose of permitting

him to exercise the option." BAI July 31, 2006 Form 10-K/A (attached as Exhibit A to

TOB) at 23 (emphasis added). Read fairly, the only question raised by this disclosure is

whether Therrien should have permitted to close out his derivative security position.

Insofar as Therrien undisputedly <u>did</u> close out his derivative security position, the answer

to this question has no relevance to the Rule 16b-6(b) exemption.

      Even assuming, <u>arguendo,</u> that Therrien's 1999 option exercise was

deemed to be a "covered transaction" under § 16(b), the teachings of the *Litzler* and

*Whittaker* Courts still would be inapposite. The Court in *Litzler* "conclude[d] that the

two-year limitations period of Section 16(b) is subject to equitable tolling when a covered

party <u>fails to comply</u> with Section 16(a) . . . ." 362 F.3d at 205 (emphasis added).

Similarly, the *Whittaker* Court held that "an insider's <u>failure to disclose</u> covered

transactions in the required [§] 16(a) reports tolls the two year limitations period for suits

under [§] 16(b) to recover profits connected with such a non-disclosed transaction." 639

F.2d at 530 (emphasis added). Relying on these cases, Plaintiff contends that Therrien

did not comply with the requirements of § 16(a), because "Therrien did not and to date

has not filed a Form 4." AB at 13. Section 16(a), however, merely dictates that a

reporting person file "the statements required by this subsection with the Commission . . .

." 15 U.S.C. § 78p(a)(1). Here, of course, Therrien undisputedly filed a Form 5 with the

SEC on November 15, 1999. Exhibit B to TOB. Filing a Form 5 is a permissible means

to report the exercise of an option, and thus, a Form 5 <u>is</u> a statement required by § 16(a).

Rule 16a3(f)(1)(i). Consequently, Plaintiff's complaint must be dismissed because (1)

the transaction at issue is specifically exempted from the scope of § 16(b) recovery; and

(2) regardless, the transaction at issue properly was disclosed on a Form 5 filed in 1999.

II.     PLAINTIFF IS NOT ENTITLED TO RELY ON EQUITABLE TOLLING IN
        ANY EVENT BECAUSE PLAINTIFF ONLY BECAME A BAI
        SHAREHOLDER YEARS AFTER THE STATUTE OF LIMITATIONS HAD
        EXPIRED

              The doctrine of equitable tolling protects a plaintiff who has a cause of

action but, either because of latency or concealment, has not yet realized that he has been

injured and who or what is the cause of that injury. *Seitzinger v. Reading Hosp. and

Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999). Both the Third Circuit Court of Appeals

and the United States Supreme Court have dictated caution when applying the doctrine of

equitable tolling. *See id.*, 165 F.3d at 239 ("The law is clear that courts must be sparing

in their use of equitable tolling"); *see also Baldwin County Welcome Ctr. v. Brown*, 466

U.S. 147, 152 (1984). Indeed, the Third Circuit repeatedly has stated that equitable

tolling is to be used only when a plaintiff has been prevented from bringing a cause of

action that accrued <u>before</u> the tolling period began. As the Court of Appeals stated in

*New Castle County v. Halliburton Nus Corp.*, 111 F.3d 1116, 1125 (3d Cir. 1997),

"equitable tolling presumes the accrual of the cause of action." Similarly, in *Cetel v.

Kirwan Fin. Group*, 460 F.3d 494, 509 (3d Cir. 2006), the Court held that "to benefit

from the equitable tolling doctrine, plaintiffs have the burden of proving three necessary

elements," one of which is that plaintiff was prevented "from recognizing the validity of

her claim within the limitations period."

              Here, Plaintiff concedes the "limitations period" would have commenced

on March 23, 2000, the alleged date of Therrien's sale of BAI stock. AB at 4. Thus,

under Plaintiff's theory of the case, the limitations period would have expired on March

4

23, 2002. Notably, Plaintiff did not purchase his single share of BAI stock until June, 2006. By definition, therefore, Plaintiff did not have standing to assert a claim within the relevant limitations period. As such, Plaintiff is not entitled to the benefit of equitable tolling. *See Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 256 (3d Cir. 2001) (to benefit from equitable tolling, plaintiff must have been prevented "from recognizing the validity of her claim within the limitations period").

Equitable tolling may be appropriate to protect a right that is in existence at the time the limitations period is tolled. It is not an appropriate vehicle to facilitate opportunism and champerty.[1] Judicial precedent consistently speaks in terms of rights that existed before a limitations period was tolled. *See Becton Dickinson and Co. v. Wolckenhauer*, 215 F.3d 340, 345 (3d Cir. 2000) ("Equitable tolling may be appropriate . . . if the plaintiff has in some extraordinary way been prevented from asserting his rights" (internal quotations omitted)); *Oshiver v. Levin, Fishbein & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994) ("Equitable tolling functions to stop the statute of limitations from running where the claim's accrual date has already passed"); *Bowers v. Transportacion Maritima Mexicana*, 901 F.2d 258, 264 (2d Cir. 1990) ("The doctrine was developed to address situations in which fraudulent or other conduct concealed the existence of a claim"); *Corcoran v. New York Power Auth.*, 202 F.3d 530, 544 (2d Cir. 1999) ("accrual may be postponed until the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause," *quoting Kronisch v. United States*, 150 F.3d

---

[1]    As revealed in the Declaration of Mark Levy, attached as Exhibit A to Plaintiff's Opposition, Plaintiff purchased a single share of BAI stock on June 8, 2006, following multiple news reports about potential option accounting errors. It would be incongruous to suggest that Plaintiff purchased his single share for any reason other than to try to purchase a lawsuit in the event that one came his way. Additionally injurious to Plaintiff's credibility is his contention that "until the Amended 10-K was filed (on July 31, 2006), public shareholders could not have known the facts giving rise to the underlying claim of this action," (AB at 14) given his purchase of a single share in order to institute this very litigation.

112, 121 (2d Cir. 1998)).  In sum, Plaintiff cannot seek the benefit of the equitable tolling doctrine where he had no right to assert a claim during the statutory limitations period.

          Finally, Plaintiff's allusion to the "discovery rule" is also without merit, as he plainly is not the intended beneficiary of that rule.  "The 'time of discovery' rule tolls the statute of limitations where an inherently unknowable injury has been suffered by one blamelessly ignorant of the act or omission and injury complained of, and the harmful effect develops gradually over a period of time." *E.I. DuPont De Nemours and Co. v. Millennium Chems., Inc.*, C.A. No. 97-237, 1999 WL 615164, *5 (D. Del. Aug. 2, 1999) (internal quotations omitted).  Plaintiff suffered no injury.  Not only did he purchase his single share years after the transaction at issue, but he asserted his demand against BAI before BAI filed the amended Form 10-K that Plaintiff now claims forms the required predicate for the application of the discovery rule.

CONCLUSION

For the foregoing reasons, and those presented in the Opening Brief in

Support of Defendant Robert J. Therrien's Motion to Dismiss, Therrien requests that

Plaintiff's Complaint be dismissed, with prejudice, for failure to state a claim upon which

relief may be granted.

POTTER ANDERSON & CORROON LLP

By:_____

OF COUNSEL:

MINTZ LEVIN COHN FERRIS
GLOVSKY
    & POPEO, P.C.
R. Robert Popeo
John F. Sylvia
Joseph P. Messina
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000

Arthur L. Dent (#2491)
Brian C. Ralston (#3770)
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, Delaware  19899
(302) 984-6000
Email: adent@potteranderson.com
          ralston@potteranderson.com

*Attorneys for Defendant Robert J. Therrien*

Dated:  November 30, 2006

764855

7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Brian C. Ralston, hereby certify that on November 30, 2006, the within

document was filed with the Clerk of the Court using CM/ECF which will send

notification of such filing(s) to the following; that the document was served on the

following counsel as indicated; and that the document is available for viewing and

downloading from CM/ECF.

> Jeffrey S. Goddess, Esquire
> Rosenthal Monhait & Goddess, P.A.
> 919 Market Street, Suite 1401
> P.O. Box 1070
> Wilmington, DE  19899
> jgoddess@rmgglaw.com

> Brian C. Ralston (I.D. No. 3770)
> Potter Anderson & Corroon LLP
> Hercules Plaza, 6th Floor
> 1313 N. Market Street
> P. O. Box 951
> Wilmington, DE  19899
> (302) 984-6000
> bralston@potteranderson.com

# EXHIBIT A



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 615164 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

E.I. Dupont De Nemours & Co. v. Millennium
Chemicals, Inc.D.Del.,1999.Only the Westlaw
citation is currently available.
United States District Court, D. Delaware.
E.I. DUPONT DE NEMOURS & CO., Plaintiff,
v.
MILLENNIUM CHEMICALS, INC. and
Millennium Inorganic Chemicals, Inc ., Defendants.
**No. C.A. 97-237-SLR.**

Aug. 2, 1999.

Richard L. Horwitz, and Joanne Ceballos, of Potter,
Anderson & Corroon LLP, Wilmington, Delaware,
for Plaintiff, John C. Vassil, and Bruce D. DeRenzi,
of Morgan & Finnegan, L.L.P., New York, New
York, of counsel.
Jack B. Blumenfeld, of Morris, Nichols, Arsht &
Tunnell, Wilmington, Delaware, for Defendants,
David A. Kalow, and Kenneth L. Bressler, of Kalow,
Springut & Bressler LLP, New York, New York, of
counsel.

MEMORANDUM OPINION
ROBINSON, J.

I. INTRODUCTION

*1 Plaintiff E.I. DuPont De Nemours & Co. filed this
patent infringement action against Millennium
Chemicals, Inc. and Millennium Inorganic
Chemicals, Inc. (collectively, "defendant") on May 1,
1997. Plaintiff is incorporated under the laws of
Delaware and has its principal place of business in
Wilmington, Delaware. (D.I.137, ¶ 2) Defendant is
also a Delaware corporation with its principal places
of business in Iselin, New Jersey and Hunt Valley,
Maryland. (D.I.137, ¶ ¶ 3-4) The court has
jurisdiction over this action under 28 U.S.C. § §
1331 and 1338. Venue is proper in this judicial
district by virtue of 28 U.S.C. § § 1391(c) and
1400(b).

Currently before the court is defendant's motion for
summary judgment (D.I.92) and plaintiff's motion to
dismiss, or in the alternative, to strike in whole or in
part defendant's second and third counterclaims
(D.I.168). In its motion, defendant argues that
plaintiff's patents violate the definiteness requirement

of 35 U.S.C. § 112 and therefore are invalid. For its
part, plaintiff seeks dismissal of defendant's second
and third counterclaims as untimely; in the
alternative, plaintiff moves the court to strike all or
part of defendant's counterclaims for failure to
comply with the applicable statute of limitations. For
the following reasons, the court shall deny both
defendant's motion for summary judgment and
plaintiff's motion to dismiss and grant in part
plaintiff's motion to strike.

II. BACKGROUND

Plaintiff is the assignee of U.S. Patent Nos. 5,631,310
("the '310 patent") and 5,889,090 ("the '090
patent").[FN1] These patents disclose processes for
manufacturing "highly loaded" silanized titanium
dioxide pigments in polyethylene or other polymer
concentrates. Manufacturers use titanium dioxide
pigment, which is white, to color various products,
including plastics (such as trash bags and diaper
linings), paints, and paper. This suit involves the use
of these pigments in the plastic film market. (D.I.160,
¶ 49) There are three steps involved in coloring
plastics using titanium dioxide pigment. First, the
titanium dioxide pigment is coated with silanes or
other materials. Second, the coated titanium dioxide
pigment is shipped to a masterbatch, or concentrate,
maker who forms the masterbatch by adding plastic
to the pigment. Third, the masterbatch maker sells
this concentrate to a plastic manufacturer who, in
turn, adds more plastic to the concentrate and
extrudes the pigmented plastic into film for use in
various consumer products. (D .I. 93 at 4)

FN1. Initially, plaintiff alleged that
defendant induced infringement of U.S.
Patent No. 5,607,994 (the " '994 patent"), a
product patent disclosing a "polyethylene
matrix consisting essentially of polyethylene
and about 50 to about 87% by weight
silanized [titanium dioxide] pigment." (D.I.
93, Ex. A, '994 patent, col. 8, lns. 20-23)
After defendant filed the instant motion for
summary judgment, plaintiff filed a second
amended complaint (D.I.137), which
substituted the '090 process patent for the
'994 patent. Plaintiff appears to have
abandoned suit over the '994 patent,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 615164 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

focussing instead on defendant's alleged inducement of infringement of the '090 and '310 patents. Defendant's instant motion for summary judgment addresses only the '994 and '310 patents. Because the '994 patent is no longer the subject of suit, the court shall address only defendant's arguments touching on the '310 patent.

In the past, the use of titanium dioxide pigment in plastics had several processing disadvantages and often resulted in product quality problems. The processing disadvantages included poor dispersability of the pigment, high energy requirements for mixing the pigment, and low productivity. The pigment concentrate also occasionally produced "lacing" (holes or tears in the plastic film) and noxious gases or rendered the film resistant to printing. (D.I. 97 at 5) In response to consumer demand for less problematic pigmentation methods, both plaintiff and defendant developed "highly loaded" preparations of coated, silanized titanium dioxide pigment, which purportedly reduce the aforementioned processing and product quality disadvantages. In its second amended complaint, plaintiff alleges that defendant has induced infringement of the '310 and '090 patents through the manufacture, advertisement, promotion, and sale of silanized titanium dioxide pigment under the trade name "TiONA® RCL-188" (hereafter, "RCL-188") for use by masterbatch manufacturers in polyethylene concentrates. (D.I.137, ¶¶ 5-8)

III. DISCUSSION

A. Defendant's Motion for Summary Judgment

**\*2** Defendant argues that several terms used in the claims of the '310 patent are ambiguous and, therefore, are invalid for indefiniteness. Defendant points to the '310 patent's use of "coating," "mixture," and "at least one" as examples of such indefiniteness. In interrogatories, defendant asked plaintiff to clarify the meaning of each of these disputed terms, but plaintiff refused "on the ground that it is premature in seeking the contentions of [plaintiff] during the initial phase of discovery." (D.I. 93, Ex. C at 2, 4, 5) The '310 patent employs these allegedly indefinite terms in the following manner.

1. "Coating"

The '310 patent uses "coating" as a verb to describe

the process of coating the pigment with "at least one organosilicon compound." (D.I.93, Ex. B, col.8, Ins.24-25, 58) Defendant contends, without supporting evidence, that the ambiguity of "coating" lies in the fact that the chemical composition of the silane, if added to water, may change at the very least from (i) the time the ingredients are mixed to (ii) the time they attach to the pigment.

(D.I. 93 at 6) Due to this purported ambiguity, it is allegedly impossible to determine whether the '310 patent covers the formula for silane as it is added to water or the formula for silane as (or after) it coats the titanium dioxide pigment. (D.I. 93 at 7)

2. "Mixture"

Claim 3 of the '310 patent discloses a process for coating a titanium dioxide pigment with an organosilicon compound "comprising a mixture of ... (a) at least one silane ... and (b) ... at least one polysiloxane...." (D.I. 93, Ex. B, col. 8, Ins. 59-60; col. 9, In. 5) Defendant asserts that the ambiguity lies in the patent's failure to claim the proportions of silane to polysiloxane which qualify as a mixture. (D.I. 93 at 7)

3. "At least one"

Finally, the '310 patent describes the pigment coating as comprising "at least one" silane or mixtures of "at least one" silane and "at least one" polysiloxane. (D.I. 93, Ex. B., col. 8, In. 24, 60; col. 9, In. 5) Defendant argues that this phrase is indefinite because the claims do not provide the meaning of, or the units of measurements associated with, the phrase "at least one." (D.I. 93 at 8)

On a motion for summary judgment, the movant bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). If a moving party fails to establish the absence of a genuine issue of fact, " 'summary judgment must be denied even if no opposing evidentiary matter is presented." ' Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970) (quoting Advisory Committee Note

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 615164 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

on 1963 Amendment to Rule 56(e)).

*3 In the context of the instant motion, defendant must demonstrate that there is no genuine issue of material fact with respect to the indefiniteness of the '310 patent claims. A patent claim is indefinite and, therefore, invalid if the claims fail to "particularly point[ ] out and distinctly claim [ ] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112. Although compliance with § 112 is a question of law, see Orthokinetics, Inc. v. Safety Travel Chairs, Inc., 806 F.2d 1565, 1576 (Fed.Cir.1986), it rests on a determination of "whether one skilled in the art would understand the bounds of the claim when read in light of the specification." Miles Labs., Inc. v. Shandon, Inc., 997 F.2d 870, 875 (Fed.Cir.1993). "If the claims read in light of the specification reasonably apprise those skilled in the art of the scope of the invention, § 112 demands no more." Id. The degree of precision necessary to satisfy § 112 depends upon the subject matter and cannot be viewed in the abstract. See id.; Shatterproof Glass Corp. v. Libbey-Owens Ford Co ., 758 F.2d 613, 624 (Fed.Cir.1985).

At issue, then, is whether one skilled in the art would find the '310 patent's use of these disputed terms indefinite. Defendant, however, offers neither evidence of the requisite degree of skill in the art nor evidence of how one skilled in the art would interpret the disputed terms. Instead, defendant merely argues in rhetorical fashion that the aforementioned terms are indefinite. Defendant cannot prevail by arguing that these terms are indefinite to any reader of the patent; rather, defendant must demonstrate that those skilled in the art would find them indefinite. See Miles Labs., 997 F.2d at 875. Terms that appear facially ambiguous to the lay reader may be perfectly definite to those versed in the technology at issue. See, e.g., Andrew Corp. v. Gabriel Elecs., Inc., 847 F.2d 819, 821 (Fed.Cir.1988) (explaining that terms such as "closely approximate," "approach each other," and "substantially equal" are upheld by courts "when serving reasonably to describe the claimed subject matter to those of skill in the field of the invention"); Seattle Box Co. v. Industrial Crating & Packing, Inc., 731 F.2d 818, 826 (Fed.Cir.1984) (finding phrase "substantially equal to" sufficiently definite). On a motion for summary judgment, abstract and rhetorical arguments in support of indefiniteness simply do not satisfy defendant's burden of proof.

Defendant also argues that the court should infer indefiniteness from plaintiff's refusal, in its responses to defendant's interrogatories, to clarify the meaning of the disputed terms. Neither the law nor logic supports such an inferential leap. On a motion for summary judgment, the nonmoving party need not present opposing evidence of definiteness where, as here, the movant has failed to show the absence of genuine factual disputes. See Adickes, 398 U.S. at 160. Because defendant has failed to demonstrate the absence of genuine issues of material fact with respect to whether one skilled in the art would understand the disputed terms, the court shall deny defendant's motion for summary judgment.

### B. Plaintiff's Motion to Dismiss or, in the Alternative, to Strike

*4 Plaintiff moves the court, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss defendant's second and third counterclaims as untimely compulsory counterclaims filed without leave of court. In the alternative, plaintiff moves pursuant to Fed.R.Civ.P. 12(f) to strike defendant's second and third counterclaims as barred by the Delaware statute of limitations. (D.I.168) Defendant asserted these counterclaims in its May 14, 1999 answer to plaintiff's second amended complaint. (D.I.160) Defendant's second counterclaim alleges that plaintiff violated § 43(a) of the Lanham Act by making false and deceptive statements about defendant's RCL-188 product. (D .I. 160, ¶ ¶ 71-73) The third counterclaim asserts a state law unfair competition claim based on these same allegations. (D.I.160, ¶ ¶ 74-75)

### 1. Plaintiff's Motion to Dismiss

In support of its motion, plaintiff argues that defendant's second and third counterclaims are compulsory and, therefore, should have been asserted earlier than in its answer to plaintiff's second amended complaint. Plaintiff, however, offers no compelling justification for departing from the well established rule that a defendant may include counterclaims in its answer to an amended complaint. See Standard Chlorine of Del., Inc. v. Sinibaldi, Civ. A. No. 91-188-SLR, 1995 WL 562285, at *2 (D.Del. Aug. 24, 1995); Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons, Inc., 50 F.R.D. 415, 419 (D.Del.1970). Courts in this district have reasoned that, because the amended pleading relates back to the date of the original pleading, the amending pleader "can hardly be heard to complain that claims filed against him are improper because they should have been asserted in response to his original

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 615164 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

pleading." *Joseph Bancroft & Sons, 50 F.R.D. at 419.*

In the present case, plaintiff filed its second amended complaint on April 7, 1999. (D.I.137) In due course, defendant then filed its answer, which included the instant counterclaims. Under the settled law of this judicial district, defendant's counterclaims were filed in a timely manner. Thus, the court shall deny plaintiff's motion to dismiss.

### 2. Plaintiff's Motion to Strike

There remains, however, the issue of whether the relevant statute of limitations bars defendant from relying on some or all of the allegations asserted in support of its second and third counterclaims. The Lanham Act provides no statute of limitations. Generally, when a federal statute provides no statute of limitations federal courts look to the applicable state statute of limitations for guidance. *See Beauty Time, Inc. v. Vu Skin Sys., Inc., 118 F.3d 140, 143 (3d Cir.1997).* Accordingly, the court must look to the Delaware statute of limitations for the relevant limitations period for both defendant's Lanham Act and state unfair competition counterclaims.

The Delaware statute of limitations provides that "no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force ... shall be brought after the expiration of 3 years from the accruing of the cause of such action...." 10 Del. C. § 8106. Because defendant's second counterclaim is "an action based on a statute" and defendant's third counterclaim is "an action to recover damages caused by an injury unaccompanied by force," Delaware's three year statute of limitations applies in the absence of an equitable exception.

*5 Most of defendant's allegations fall within this three year period. Indeed, defendant asserts that plaintiff currently "is informing its customers and potential customers-all of whom are either customers or potential customers of [defendant]-that the use of [defendant's] RCL-188 product will infringe [plaintiff's] patents, even though [plaintiff] knows ... that its patents are invalid and unenforceable." (D.I.160, ¶ 63) Although defendant provides no specific dates for plaintiff's allegedly deceptive statements, defendant has asserted an ongoing pattern of misrepresentations and disparagement of its RCL-188 pigment by plaintiff. As such, these allegations fall within the limitations period.[FN2] Insofar as defendant relies on plaintiff's false statements about defendant's RCL-188 product, the statute of

limitations does not bar defendant's second and third counterclaims.

> FN2. Defendant need not, as plaintiff argues, specify the exact date of these alleged falsehoods.

Defendant, however, also refers to a July 1995 incident in support of its second and third counterclaims. Specifically, defendant alleges that in or about July 1995, [plaintiff] distributed to customers and potential customers a brochure comparing two of its titanium dioxide products to [defendant's competing product, RCL-4]. In that brochure, [plaintiff] intentionally made the false claims that its R-101 and R-104 products had significantly better vinyl tinting strength than RCL-4 and better dispersability than RCL-4. In fact, [plaintiff's] own internal testing documents show otherwise. The brochure also falsely claimed that [defendant's] RCL-4 product contained methyl stearate-a compound disfavored by customers-when, in fact, RCL-4 contains no methyl stearate.

(D.I.160, ¶ 65) Because defendant filed its counterclaims in May of 1999, events relating to this 1995 brochure fall outside the three year limitations period. In the absence of some equitable exception, defendant cannot rely upon this 1995 brochure to support its second and third counterclaims.

Defendant claims that the "time of discovery rule" provides such an exception. The "time of discovery rule" tolls the statute of limitations where "an inherently unknowable injury ... has been suffered by one blamelessly ignorant of the act or omission and injury complained of, and the harmful effect ... develops gradually over a period of time...." *Cavalier Group v. Strescon Indus., Inc., 782 F.Supp. 946, 951 (D.Del.1992)* (internal quotations and citation omitted). The statute of limitations period is tolled until a person of ordinary intelligence and prudence would have had facts sufficient to put them on notice of an injury. *Id.* Defendant claims in its answering brief, but not in its counterclaims, that it was "blamelessly ignorant" of plaintiff's allegedly misleading brochure until discovery commenced in the present litigation. (D.I. 176 at 11)

The court finds that the "time of discovery" rule is not applicable to the instant case. A misleading product brochure is not an "inherently unknowable injury," especially when the brochure in question was distributed to "potential customers" in a highly

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 615164 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 5

competitive market. As such, defendant's counterclaims with respect to this 1995 incident are barred by the statute of limitations. Moreover, the 1995 brochure is irrelevant and immaterial to the issues at bar because it refers to completely different products than those allegedly covered by the '310 and '090 patents. Accordingly, pursuant to Fed.R.Civ.P. 12(f), the court shall strike ¶ 65 from defendant's second and third counterclaims.

## IV. CONCLUSION

**\*6** For the aforementioned reasons, the court shall deny defendant's motion for summary judgment and plaintiff's motion to dismiss and grant in part and deny in part plaintiff's motion to strike. An appropriate order shall issue.

D.Del.,1999.
E.I. Dupont De Nemours & Co. v. Millennium Chemicals, Inc.
Not Reported in F.Supp.2d, 1999 WL 615164 (D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.