**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------x
                                          :
MARK LEVY,                                :
                                          :     C.A. No. 06-517-GMS-LPS
                        Plaintiff,        :
                                          :
          v.                              :
                                          :
ROBERT J. THERRIEN and                    :
BROOKS AUTOMATION, INC.,                  :
                                          :
                                          :
                        Defendants.       :
                                          :
------------------------------------------------------------x
```

**PLAINTIFFS' BRIEF IN SUPPORT OF APPLICATION FOR APPROVAL OF**
**PROPOSED SETTLEMENT AND ATTORNEYS' FEES AND EXPENSES**

**ROSENTHAL, MONHAIT &**
**GODDESS, P.A.**
Jeffrey Goddess, Esq. (DE. Bar. No. 630)
P. Bradford deLeeuw, Esq. (DE. Bar. No. 3569)
919 Market Street, Suite 1401
Wilmington, Delaware 19899
Telephone: (302) 656-4433

*Liaison Counsel for Plaintiffs*

**ABRAHAM, FRUCHTER &**
**TWERSKY LLP**
Mitchell M.Z. Twersky, Esq.(*pro hac vice*)
Ximena R. Skovron, Esq.(*pro hac vice*)
One Pennsylvania Plaza, Suite 2805
New York, New York 10119
Telephone: (212) 279-5050

*Lead Counsel for Plaintiffs*

## TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.     THE PROPOSED SETTLEMENT IS FAIR AND REASONABLE . . . . . . . . . . . . . . . 7

       A.     There Are Significant Risks That Plaintiffs Cannot Establish Liability . . . . . . . . 8

       B.     Risk of Establishing Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       C.     The Complexity, Expense and Likely Duration of the Litigation . . . . . . . . . . . 10

       D.     The Stage of the Proceeding and the Amount of Discovery Completed . . . . . . . 11

       E.     Ability of Defendant to Withstand a Greater Judgment . . . . . . . . . . . . . . . . . . . 12

       F.     Range of Reasonableness in Light of the Maximum Possible 12
              Recovery and all the Attendant Risks of the Litigation . . . . . . . . . . . . . . . . . . . 12

       G.     The Reaction of Other Shareholders to the Settlement . . . . . . . . . . . . . . . . . . . 13

       H.     The Congressional Purpose of Causing Disgorgement
              of Short-Swing Trading Profits by Corporate Insiders . . . . . . . . . . . . . . . . . . . 13

II.    PLAINTIFFS' COUNSEL ARE ENTITLED TO COMPENSATION BASED
       UPON THE SUBSTANTIAL BENEFIT THEY HAVE ACHIEVED
       FOR BROOKS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

       A.     The Amount of Compensation Requested is Fair and Reasonable . . . . . . . . . . 15

       B.     The Fees Requested Are Also Appropriate Under The Criteria Established
              By The Third Circuit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

i

1.      Size of the Fund and the Number of Persons Benefitted and the Presence
        or Absence of Objections by Shareholders  . . . . . . . . . . . . . . . . . . . . . . . . 17

2.      The Quality of the Representation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

3.      The Complexity and Duration of the Litigation . . . . . . . . . . . . . . . . . . . . . 17

4.      The Risk of Nonpayment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

5.      The Time and Labor Expended By Counsel  . . . . . . . . . . . . . . . . . . . . . . . 18

6.      Awards in Similar Cases  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

C.      The Requested Award for Fees and Expenses is Also Fair and Reasonable Under
        the Lodestar Method of Calculation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE(S)**

*Bell Atlantic Corp. v. Bolger*,
    2 F.3d 1304 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

*Blau v. Hodgkinson*,
    100 F. Supp. 361 (S.D.N.Y. 1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Blau v. Rayette-Faberge, Inc.*,
    389 F.2d 469 (2d Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Boeing v. Van Gemert*,
    444 U.S. 472 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Bullock v. Adm'r Estate of Kircher*,
    84 F.R.D. 1 (D. N.J. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11, 13

*Courteau v. United States*,
    No. 07-2948, 2008 U.S. App. LEXIS 16039 (3d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . 9

*Girsh* v. *Jepson*,
    521 F.2d 153 (3d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Goldberger v. Integrated Resources, Inc.*,
    209 F.2d 43 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re AT&T Corp. Secs. Litig.*,
    455 F.3d 160 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*In re Cendant Corp. Sec. Litig.*,
    109 F. Supp. 2d 235 (D.N.J. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

*In re Continental Illinois Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re General Motors Pick-up Truck Fuel Tank Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Goul Sec. Litig.*,
    727 F. Supp. 1201 (N.D. Ill. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Jiffy Lube Sec. Litig.*,
    927 F.2d 155 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re: Merry-Go-Round Enterprises, Inc.*,
    244 B.R. 327 (Bankr. Md. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re: NASDAQ Market Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Action*,
    148 F.3d 283 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Lazy Oil Co. v. Witco Corp.,*
    95 F. Supp. 2d 290 (W.D. Pa. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Lerner v. Millenco, L.P.,*
    23 F. Supp. 2d 345 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Levy v. Clearwater Fund IV, Ltd.,*
    No. 99-004-SLR, 2000 WL 152128 (D. Del. 2000) . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 15

*Levy v. General Elec. Capital Corp.,*
    99 Civ. 10560, 2001 U.S. Dist. LEXIS 13099 (S.D.N.Y. August 30, 2001) . . . . . . . . . . . 7

*Levy v. Office Depot, Inc.,*
    No. 02-16369, 2003 U.S. App. LEXIS 26922 (11th Cir. Oct. 31, 2003) . . . . . . . . . . . . . 11

*Levy v. Southbrook Int'l Investments Ltd.,*
    263 F.3d 10 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16

*Levy v. Wingate Capital Ltd.,*
    No. 99-655-GMS (D. Del.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Mills* v. *Electric Auto-lite Co.,*
    396 U.S. 375 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

iv

*Milstein v. Huck*,
   600 F. Supp. 254 (E.D.N.Y. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Morales v. Geothermal Resources Int'l Inc.*,
   CCH Fed. Sec. L. Rep. ¶ 98 (S.D.N.Y. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Rader v. Sharebuilder Corp.*,
   No. 10-398-LPS, 2011 U.S. Dist. LEXIS 30463 (D. Del. Mar. 24, 2011) . . . . . . . . . . . 8

*Rosen v. Price*,
   No. 95 Civ 5089, 1998 U.S. Dist. LEXIS 9198 (S.D.N.Y. June 23, 1998) . . . . . . . . . 13

*Rosenberg v. Tudor Investment Corp. et al.*,
   No. 00-CV-925 (D. Del.) (Farnan, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Rosenberg v. XM Ventures*,
   274 F.3d 137 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Schimmel v. Goldman*,
   57 F.R.D. 481 (S.D.N.Y. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Smolowe v. Delendo Corp.*,
   136 F.2d 231, 241 (2d Cir. 1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Steiner v. Williams*,
   No. 99 Civ. 10186 (JSM), 2001 U.S. Dist. LEXIS 7097 (S.D.N.Y. May 31, 2001) . . . . 16

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

## STATUTES AND RULES

15 U.S.C. § 78p(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

17 C.F.R. §240.16b-3(d)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 8, 9

17 C.F.R. §240.16b-6(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 23.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## OTHER MATERIALS

Romeo & Dye, *Comprehensive Section 16(b) Outline* (June 2005) . . . . . . . . . . . . . . . . . . . . . 12

Plaintiffs Mark Levy and Aron Rosenberg ("Plaintiffs") respectfully submit their Brief in Support of Application for Approval of Proposed Settlement and Attorneys' Fees and Expenses.

## NATURE AND STAGE OF PROCEEDINGS

On August 22, 2006, Mark Levy, a shareholder of Defendant Brooks Automation, Inc. ("Brooks"), commenced an action captioned *Levy v. Therrien., et al.,* C.A. No. 06-517-LPS ( "Levy Action") pursuant to Section 16(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78p(b) ("Section 16(b)"), seeking to disgorge short-swing profits allegedly realized by Defendant Robert J. Therrien ("Therrien" and together with Brooks, "Defendants"), a former director and officer of Brooks, in connection with his receipt and subsequent sale of Brooks common stock ("Common Stock").  A substantially similar action, *Rosenberg v. Therrien, et al.*, No. 07-cv-00091, was subsequently filed and consolidated with the Levy Action ("Rosenberg Action" and with the Levy Action, the "Section 16(b) Actions").[1]

In particular, Plaintiffs allege that Therrien realized approximately $15.7 million in short-swing profits from Therrien's November 1999 purchase of 225,000 shares of Common Stock purportedly pursuant to the exercise of stock options granted by Brooks in 1994, followed by Therrien's sale of 225,000 shares of Common Stock in a secondary public offering conducted within six months of the purchase.  Following the denial of Defendants' motions to dismiss and formal discovery, Therrien asserted two affirmative defenses based upon SEC Rules 16b-3(d)(3)

---

[1] Abraham, Fruchter & Twersky LLP ("AFT") is lead counsel for both cases and also represents Levy and Rosenberg individually.

1

and 16b-6(a) and produced documentary evidence supporting these defenses.  Specifically, Therrien asserted that his acquisition of the Common Stock in November 1999 was not deemed a purchase for purposes of Section 16(b) because he had acquired the Common Stock pursuant to stock options that he had properly exercised prior to their expiration in August 1999, and that the Board had ratified this exercise *post facto*.  If proven, the application of these Rules would result in a complete defense to Section 16(b) liability and a bar to any recovery.

In 2006, the U.S. Department of Justice ("DOJ") and the Securities and Exchange Commission ("SEC") commenced investigations into Therrien's purported exercise of the 1994 stock options to determine whether Therrien had, among other things, evaded paying taxes on the gains or otherwise improperly exercised the options in violation of the federal securities laws. The DOJ investigation culminated in a jury trial held in March and April 2009 in which Therrien was found not guilty.

The SEC filed a civil action against Therrien ("SEC Action"), which was stayed pending the criminal trial and has now been settled in principle subject to approval by the SEC and the court in that action.  The settlement of the Section 16(b) Actions is an express condition for a settlement among Brooks, Therrien and Brooks' insurance carriers, which resolves all pending litigation related to Brooks' past option-granting practices.  In particular, Brooks must receive the settlement proceeds from the Section 16(b) Actions as one of the conditions for Brooks to partially reimburse Therrien for the disgorgement portion (but not the payment of penalties) of his proposed settlement with the SEC.

The terms of the settlement of the Section 16(b) Actions, which was mediated before Your Honor and are the product of almost two years of arm's length negotiations, are fair and

2

reasonable.  The settlement amount is $1,898,268 ("Settlement Amount"), which represents the proceeds of the sale by Therrien of 150,000 shares of his Common Stock in accordance with the terms of the Stipulation and Agreement of Compromise, Settlement and Release ("Settlement Agreement") (attached hereto as Ex. 1).  Shareholders have received notice of the proposed settlement and notice that Plaintiffs intend to apply for an attorneys fee and expense award not to exceed thirty percent (30%) of the Settlement Amount ("Shareholder Notice") (attached hereto as Ex. 2).  No shareholder objections have been received to date.

Accordingly, Plaintiffs seek the Court's approval for the settlement of the Section 16(b) Actions for $1,898,268 under the terms of the Settlement Agreement.  In Part II below, Plaintiffs seek the Court's approval for the payment of thirty percent (30%) of the Settlement Amount in attorneys' fees and expenses for the work performed and expenses incurred by Plaintiffs' counsel in investigating and litigating the Section 16(b) Actions over the course of almost five years. Plaintiffs' applications are unopposed.

## SUMMARY OF ARGUMENT

1.  The Court should approve the proposed settlement of $1,898,268, which is fair and reasonable in light of the serious litigation risks faced by Plaintiffs.

2.  There is a substantial risk that Therrien may be relieved of Section 16(b) liability pursuant to an exemption contained in Rule 16b-3(d)(3) for securities which the insider can establish have been held for more than six months.  If successful, this affirmative defense would be an absolute bar to Therrien's liability pursuant to Section 16(b).

3.  Another significant impediment to Plaintiffs' case is Therrien's assertion of the exemption contained in Rule 16b-6(a) for the exercise of certain fixed price securities.

3

4.      The Court should approve Plaintiffs' request for an award of attorneys' fees and expenses equal to thirty percent (30%) of the Settlement Amount, which will adequately compensate Plaintiffs' counsel for their work over the course of five years; that work includes overcoming Defendants' respective motions to dismiss, reviewing over thirty thousand pages of documents produced in discovery, preventing the Section 16(b) Actions from being released in a settlement of a federal shareholder class action, and negotiating a settlement significantly complicated by Therrien's concurrent settlement negotiations with the SEC.

## STATEMENT OF FACTS

At all relevant times, Plaintiffs were shareholders of Brooks and Defendant Therrien was the Chief Executive Officer of Brooks.  The Levy Action and the Rosenberg Action were consolidated on April 4, 2007 pursuant to a "So Ordered" docket entry, and the instant action was designated the lead case.  AFT was designated lead counsel and Rosenthal, Monhait & Goddess P.A. ("Rosenthal") was designated liaison counsel.  On October 12, 2006, Brooks and Therrien each moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  DI #8, 10.  Following briefing by the parties and oral argument, on July 14, 2008, the Court denied Defendants' respective motions to dismiss.  DI #39, 40.  Therrien filed his answer on July 28, 2008 (DI #41), and Brooks filed its answer on August 4, 2008.  DI #44.  Discovery commenced and included interrogatories and requests for the production of documents.  Plaintiffs sought categories of documents dating back over ten years concerning, among other things, Therrien's various stock incentive award plans, stock certificates, minutes of board meetings pertaining to the grant,

4

transfer and exercise of Therrien's options and documents concerning the purported loan of $546,750 made by Brooks to Therrien which Therrien alleged in support of his Rule 16b-6(a) defense, discussed in more detail in Part I.A below.

In response, Defendants produced, and Plaintiffs' counsel reviewed and analyzed, over 30,000 pages of documents, which included documents produced in the SEC and DOJ actions. Additionally, because the facts underlying the DOJ and SEC Actions were also highly relevant to the Section 16(b) Actions, Plaintiffs' counsel kept apprised on a daily basis of developments in those actions, reviewed the parties' filings when they pertained to the issues raised in the Section 16(b) Actions, and obtained and reviewed the trial transcript in the DOJ action, which consisted of 3,731 pages, as well as the parties' motions *in limine*, the jury instructions, and other relevant trial documents.  Plaintiffs also served notices of deposition and subpoenas *duces tecum* on over a dozen witnesses consisting of former and current Brooks officers, directors and other knowledgeable employees, many of whom testified at the DOJ trial.  On the eve of these depositions, the parties entered settlement discussions, and discovery was halted to allow for the parties' good faith settlement negotiations to proceed.

**The Shareholder Class Action**

On June 19, 2006, Charles E.G. Leech filed *Leech v. Brooks Automation, Inc. et al.*, No. 06-cv-10943-RWZ, a class action alleging violations of the federal securities laws in connection with stock options granted by Brooks to Therrien, among others (the "Class Action").  During settlement negotiations in the Class Action, the settlement documents appeared to release the Section 16(b) Actions.  On August 7, 2008, AFT prepared a letter to all counsel seeking clarification from the parties and setting forth Plaintiffs' objection to such a release.  Following

receipt of the letter, the parties to the Class Action ultimately agreed that the Section 16(b)

Actions were to be carved out of the Class Action settlement.  Pending the agreement of all

parties, Plaintiffs' counsel also prepared a formal Objection to the settlement and stood ready to

file it with the *Leech* court in the event an agreement was not forthcoming.

**The DOJ Action**

On July 25, 2007, a federal grand jury indicted Therrien with charges of tax evasion

resulting from his failure to exercise the 1994 stock options prior to their expiration on August

15, 1999 and his subsequent purchase from Brooks of 225,000 shares of common stock at the

discounted price of $2.43 per share in November 1999.  The case, captioned *United States v.*

*Robert J. Therrien*, No. 07-cr-10238 (D. Mass.) (the "DOJ Action"), ultimately led to a jury trial

conducted between March 9 and April 9, 2009, in which Therrien was found not guilty.

**The SEC Action**

On July 25, 2007, the SEC commenced an action captioned *SEC v. Robert J. Therrien,*

C.A. No. 07-11364-WGY (D. Mass.) (the "SEC Action") alleging violations of the Securities

Act of 1933 and the Exchange Act arising out of, *inter alia*, Therrien's purported November

1999 backdating of the exercise of his 1994 stock options so that he is deemed to have exercised

those options prior to their expiration.  Therrien has reached a settlement in principle with the

SEC, subject to approval by the SEC and the court in that action.

**Settlement Negotiations and Terms of Settlement**

On June 9, 2009, the parties participated in mediation before Your Honor.  On February

17, 2011, following eighteen months of exhaustive negotiations complicated by Therrien's

settlement negotiations in the SEC Action and Brooks' negotiations with its D&O insurer

regarding the payment of Therrien's defense costs in that action, the parties agreed to settle the Section 16(b) Actions for an amount equal to the proceeds (less attorneys' fees and expenses awarded) received by Therrien from the sale of 150,000 shares of his Common Stock in increments of ten thousand (10,000) shares per day, commencing as soon as practicable and no later than seven (7) days after the Settlement Agreement was executed. Therrien has effectuated the sale and has received proceeds of $1,898,268, which comprise the Settlement Amount. Therrien is responsible for the payment of taxes on taxable gains realized on the sale.

On March 29, 2011, the Court approved the form and content of the proposed Shareholder Notice, as amended, and entered the parties' proposed Scheduling Order, as amended. DI #93, 94. On March 31, 2011, Brooks commenced the mailing of the Shareholder Notice. The deadline for shareholder objections is May 9, 2011. No shareholder objections have been received to date. The final settlement hearing is scheduled for May 17, 2011.

<u>**ARGUMENT**</u>

## I.    THE PROPOSED SETTLEMENT IS FAIR AND REASONABLE

The factors to be considered in determining whether the settlement of a Section 16(b) action is fair and reasonable were expounded in *Levy v. General Elec. Capital Corp.*, 99 Civ. 10560, 2001 U.S. Dist. LEXIS 13099 at *18-19 (S.D.N.Y. August 30, 2001).[2]  These factors are:

> (1)    the risks of establishing liability;
> (2)    the risks of proving damages;
> (3)    the complexity, expense and likely duration of the litigation;

---

[2] *Levy* based these factors on those that guide the Second and Third Circuits in determining whether the settlement of a shareholder class action or derivative action is fair and reasonable. *See City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974); *Girsh* v. *Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993).

(4)    the stage of the proceeding and the amount of discovery completed;

(5)    the ability of defendants to withstand a greater judgment;

(6)    the range of reasonableness in light of the maximum possible recovery and range of reasonableness in light of all the attendant risks of the litigation;

(7)    the reaction of other shareholders to the settlement; and

(8)    the congressional purpose of causing disgorgement of short-swing trading profits by corporate insiders.

The good faith compromise reached by the parties amply satisfies this standard. The Court should approve this settlement because it balances Plaintiffs' likelihood of success against the serious questions of law and fact that stand in their way. *Schimmel v. Goldman,* 57 F.R.D. 481, 484 (S.D.N.Y. 1973). Approval of this settlement is also consistent with the policy that compromises of disputed claims are favored by the courts. *See, e.g.*, *Rader v. Sharebuilder Corp.*, No. 10-398-LPS, 2011 U.S. Dist. LEXIS 30463, at *14-15 (D. Del. Mar. 24, 2011).

## A.    <u>There Are Significant Risks That Plaintiffs Cannot Establish Liability</u>

The "primary concern" of a District Court considering the reasonableness of the proposed settlement is a comparison between the terms of the compromise and the "likely rewards of litigation." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). Because the rewards of the litigation are extremely uncertain here, this factor counsels strongly in favor of approving the proposed settlement.

Specifically, Therrien has raised two affirmative defenses based upon exemptions contained in Rules 16b-3(d)(3) [17 C.F.R. §240.16b-3(d)(3)] and 16b-6(a) [17 C.F.R. §240.16b-6(a)] which if proven would be an absolute defense to Section 16(b) liability. Rule 16b-3(d)(3) provides an exemption from Section 16(b) where the insider can establish that he held the specific securities he has received from the issuer for more than six months. Prior to mediation, Therrien produced copies of brokerage account statements listing the serial numbers of the

8

Common Stock that Therrien sold in connection with the secondary offering.  These serial numbers were different than the serial numbers of the shares Therrien acquired in November 1999 and appear to have been in his possession for a period of more than six months.[3]  If true, these facts provide compelling evidence that Therrien is entitled to the Rule 16b-3(d)(3) exemption.  Plaintiffs were prepared to argue that Therrien was barred from relying on Rule 16b-3(d)(3) as an affirmative defense since it was not timely raised.  Nonetheless, Plaintiffs recognize that in the interests of adjudicating cases on the merits, courts typically permit the assertion of affirmative defenses despite their untimeliness.  *See*, *e.g., Courteau v. United States*, No. 07-2948, 2008 U.S. App. LEXIS 16039, at * 161-62 (3d Cir. 2008).

Therrien's assertion of Rule 16b-6(a) as a defense also provides Therrien with a cogent defense to Section 16(b) liability.  Rule 16b-6(a) provides that the acquisition of the common stock underlying a derivative security, such as a stock option, occurs upon the fixing of the exercise price of that derivative security.  *See* 17 C.F.R. §240.16b-6(a).  Therrien argued that he exercised his stock options prior to their expiration in August 1999 and therefore, the Common Stock he obtained upon such exercise was deemed to have been acquired upon the issuance of the 1994 options pursuant to Rule 16b-6(a) and the exercise of the options are deemed a non-event under Section 16(b) pursuant to Rule 16b-6(b).  The application of these rules turns on whether Therrien properly exercised his 1994 options prior to their expiration in August 1999 pursuant to their terms or whether the options expired and Therrien was simply granted Common Stock by the issuer in November 1999.  In support of his contention that the Common Stock was

---

[3] No deposition discovery however, has taken place concerning this issue, and there has been no opportunity to probe the veracity of these documents.

obtained pursuant to the timely exercise of his 1994 options, Therrien pointed to a purported

$546,750 loan from Brooks in August 1999 that permitted him to exercise his stock options and

produced a promissory note and directors' ratification to that effect.  Although Plaintiffs were

prepared to argue that the loan had not been properly approved by the board, and therefore, the

Common Stock Therrien acquired in November 1999 was not pursuant to the valid exercise of

his stock options, Plaintiffs recognize that the conflicting factual evidence would likely preclude

summary judgment in Plaintiffs' favor on this defense and that this issue could ultimately be

determined in Therrien's favor.

### B.      Risk of Establishing Damages

This inquiry attempts to measure the expected value of litigating the action rather than

settling it now.  *In re General Motors Pick-up Truck Fuel Tank Liab. Litig.*, 55 F.3d 768, 816 (3d

Cir. 1995).  Here, if Plaintiffs are able to overcome Therrien's affirmative defenses, the

"expected value of litigating the action" would be $15.7 million, the short-swing profits Therrien

allegedly earned from the sale of the Common Stock in the secondary offering.  However, this

amount is unlikely to be disgorged in this action even following a trial given the strength of the

absolute defenses to liability that Therrien has asserted.  *See* Section A, *supra*.

### C.      The Complexity, Expense and Likely Duration of the Litigation

The expense and possible duration of the litigation are major factors that "weigh heavily"

in favor of approving a settlement.  *Bullock v. Adm'r Estate of Kircher*, 84 F.R.D. 1, 10 (D. N.J.

1979); *see also Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984).  The time and expense

that will necessarily be incurred by the parties if this case were to proceed strongly weigh in favor

of settlement.  If this case were to proceed, significant attorneys' time and resources, as well as

that of the parties and Court would be expended in dealing with additional discovery, including

party and non-party depositions, motion practice, briefing and eventually trial and any appeals.

### D.     The Stage of the Proceeding and the Amount of Discovery Completed

The amount of discovery completed is a factor that courts take into account when

considering the reasonableness of a settlement.  *See City of Detroit,* 495 F.2d at 463; *Bell*

*Atlantic Corp*, 2 F.3d at 1311.  The Section 16(b) Actions are in an advanced stage of litigation,

following dispositive motion practice, formal discovery and mediation before the Court.

Plaintiffs have reviewed and analyzed over thirty thousand pages of documents produced by

Defendants.  Plaintiffs also independently obtained, reviewed and analyzed relevant documents

in the DOJ action, as well as the trial transcript, which provided additional information

pertaining to the facts underlying the Section 16(b) Actions, the potential testimony of relevant

witnesses, and Therrien's position and defenses.

Another factor that courts consider when evaluating a settlement is whether plaintiff's

counsel has experience with such actions and could therefore realistically assess the possibility of

a judgment on the merits.  *See In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991).

Here, Plaintiffs' counsel has ample experience litigating Section 16(b) claims.  *See*, *e.g.*,

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*, No. 06-2692 (S.D.N.Y. 2006) (summary

judgment in favor of plaintiffs for $4.9 million) (DI #98); *Levy v. Office Depot, Inc.*, No. 02-

16369, 2003 U.S. App. LEXIS 26922 (11th Cir. Oct. 31, 2003); *Rosenberg v. XM Ventures*, 274

F.3d 137 (3d Cir. 2001); *Rosenberg v. Tudor Investment Corp. et al.*, No. 00-CV-925 (D. Del.)

(Farnan, J.); *Levy v. Southbrook Int'l Investments Ltd.,* 263 F.3d 10 (2d Cir. 2001); *Feder v.*

*Frost*, 220 F.3d 29 (2d Cir. 2000); *Levy v. Clearwater Fund IV, Ltd.*, No. 99-004-SLR, 2000 WL

152128 (D. Del. 2000); *Lerner v. Millenco, L.P.,* 23 F. Supp. 2d 345 (S.D.N.Y. 1998).  AFT is

among only a few law firms in the country that have expertise in litigating Section 16(b) claims

on behalf of issuers and investors.  *See* Romeo & Dye, *Comprehensive Section 16(b) Outline* at

288 (June 2005) (noting that Messrs. Abraham, Fruchter and Twersky are three of seven Section

16(b) practitioners in the nation).  Accordingly, this factor weighs in favor of the proposed

settlement.

      **E.**      **Ability of Defendant to Withstand a Greater Judgment**

      This factor is relevant where the ability of the defendant to pay a fair recovery is called

into doubt because of his "precarious financial condition."  *Lazy Oil Co. v. Witco Corp.,* 95

F. Supp. 2d 290, 338 (W.D. Pa. 1997).[4]  Therrien is no longer employed by Brooks and will be

required to disgorge monies and pay penalties of approximately $1 million in connection with the

settlement of the SEC Action.  It is therefore uncertain whether Therrien would be able to

withstand a greater judgment, particularly a $15.7 million judgment.

      **F.**      **Range of Reasonableness in Light of the Maximum Possible**
               **Recovery and all the Attendant Risks of the Litigation**

      The "primary concern" of a District Court considering the reasonableness of a settlement

is a comparison between the terms of the compromise and the "likely rewards of litigation."

*Weinberger v. Kendrick*, 698 F.2d at 73; *see also Morales v. Geothermal Resources Int'l Inc.,*

CCH Fed. Sec. L. Rep. ¶ 98,038 at 91,371 (S.D.N.Y. 1981).  Where a plaintiff's claim is

uncertain, "there is no reason, at least in theory, why a satisfactory settlement could not amount

---

[4] However, the ability to withstand a greater judgment "will not scuttle a settlement where other
factors counsel settlement approval."  *In re Cendant Corp. Sec. Litig.,* 109 F. Supp. 2d 235, 263
(D.N.J. 2000).

to a hundredth or even a thousandth part of a single percent of the potential recovery." *City of Detroit*, 495 F.2d at 455. Thus, where the settlement amount compares favorably to the amount likely to be recoverable, a court should not be swayed by the fact that a plaintiff has pled potential damages that it may never come close to recovering. Here, the amount of short-swing profits alleged to have been realized by Therrien is far from certain given the affirmative defenses that Therrien has asserted. Therefore, the Settlement Amount is adequate.

**G.      The Reaction of Other Shareholders to the Settlement**

Courts have held that Rule 23.1 of the Federal Rules of Civil Procedure, and more specifically, its notice requirement, does not apply to Section 16(b) actions. *See*, *e.g.*, *Rosen v. Price*, No. 95 Civ. 5089, 1998 U.S. Dist. LEXIS 9198 (S.D.N.Y. June 23, 1998). This approach was taken in *Levy v. Clearwater Fund IV, Ltd.*, No. 99-004-SLR, 2000 WL 152128 (D. Del. 2000) and *Levy v. Wingate Capital Ltd.*, No. 99-655-GMS (D. Del.). Nonetheless, here, on March 31, 2011, Brooks mailed notice of the proposed settlement. No objections have been received to date. This factor therefore clearly weighs in favor of approving the settlement.

**H.      The Congressional Purpose of Causing Disgorgement
of Short-Swing Trading Profits by Corporate Insiders**

There are policy reasons why courts should not approve settlements permitting insiders to evade liability for clear-cut Section 16(b) violations. *See*, *e.g.*, *Blau v. Hodgkinson*, 100 F. Supp. 361, 371 (S.D.N.Y. 1951). But these policy considerations are not present here. In this action, as detailed above, it is far from certain that a Section 16(b) violation has occurred. Under such circumstances, the Congressional purpose of Section 16(b) will not be frustrated by a settlement

13

of this action under the terms contemplated - - a settlement that the parties have agreed to after vigorous arm's length negotiations.

## II.     PLAINTIFFS' COUNSEL ARE ENTITLED TO COMPENSATION BASED UPON THE SUBSTANTIAL BENEFIT THEY HAVE ACHIEVED FOR BROOKS

"A litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills* v. *Electric Auto-lite Co.*, 396 U.S. 375, 394-96 (1970). "This doctrine serves the twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Goul Sec. Litig.*, 727 F. Supp. 1201, 1203 (N.D. Ill. 1989). In the context of Section 16(b) claims, attorneys' fees routinely have been awarded to a security holder's counsel. Moreover, awarding attorneys' fees allows for the statute's purpose to be fulfilled in facilitating a plaintiff's ability to buy a security, hire a lawyer, sue, and have his attorneys' fees paid out of any recovery. *Blau v. Rayette-Faberge, Inc.*, 389 F.2d 469, 471 (2d Cir. 1968); *Smolowe v. Delendo Corp.*, 136 F.2d 231, 241 (2d Cir. 1943). This is particularly appropriate in the context of a Section 16(b) case, where shareholders and their counsel, not the SEC, are authorized to pursue civil suits for damages. Based upon the extensive work performed in this case by Plaintiffs' counsel over the course of almost five years without which this settlement would not have been reached, Plaintiffs request that the Court award 30% of the proposed settlement of $1,898,268, or $569,480, in attorneys' fees, inclusive of expenses. Defendants do not oppose Plaintiffs' request.

14

A.      **The Amount of Compensation Requested is Fair and Reasonable**

In awarding attorneys' fees "market rates where available, are the ideal proxy for . . .

compensation." *Goldberger v. Integrated Resources, Inc.*, 209 F.2d 43, 52 (2d Cir. 2000).  This

reflects the basic fact that no matter how wise and experienced a judiciary we have, "[m]arkets

know market values better than judges do." *In re Continental Illinois Sec. Litig.*, 962 F.2d 566,

572 (7th Cir. 1992).  Plaintiffs' primary counsel, Abraham, Fruchter & Twersky LLP are well-

recognized experts in the area of Section 16(b) law.  *See* Romeo & Dye, *supra*. AFT's expertise

in Section 16(b) law and record of substantial monetary recoveries on behalf of issuers is well

documented.  In fact, AFT has been retained by issuers to pursue Section 16(b) claims under

agreements providing AFT with 40% of any recovery in payment of its legal fees.  Additionally,

the fees awarded to AFT in connection with litigating other Section 16(b) actions have been in

the range of 30% and higher of the recovered short-swing profits.  *See, e.g., In re*

*PurchasePro.com*, No. BK-S-02-20472  (Bankr. D.Nev.) (Order Approving First and Final Fee

Application of AFT, entered June 3, 2004).  In *PurchasePro.com*, for example, a bankruptcy

Trustee with the approval of the U.S. Bankruptcy Court for the District of Nevada retained AFT

to represent the bankrupt estate in a Section 16(b) action under an agreement providing AFT

331/3% of the total recovery in payment of its legal fee. The fee was later approved by the court

upon settlement of the action.  *See also Clearwater Fund,* 2000 WL 152128 (in a Section 16(b)

action, awarding 33 1/3% to Messrs. Abraham and Twersky) (DI #47-1).

Indeed, AFT achieved one of the **largest** known cash recoveries - - $20 million - - in a

Section 16(b) case in which Judge John S. Martin, Jr. praised the "diligence and ingenuity" of

Messrs. Abraham, Fruchter and Twersky, and attributed the recovery to the sole efforts of the

firm.  *See Steiner v. Williams*, No. 99 Civ. 10186 (JSM), 2001 U.S. Dist. LEXIS 7097, at *18

(S.D.N.Y. May 31, 2001).  The court awarded AFT 30% of the recovery for its fees and

expenses.  As in *Southbrook*, the recovery here is solely the result of AFT's diligence as Brooks

refused to prosecute this action upon demand and even sought dismissal.  Therefore, an award of

30% of the recovery in this action is well within the range of the market value of Plaintiffs'

counsel's work and reflects the substantial benefit conferred on Brooks.  The requested fee is

also comfortably within the type of fees awarded under the percentage of recovery approach for

this type of action.  *See* Jacobs, *supra*, §3.10 (up to 49% of a recovery has been awarded as

attorneys fees in Section 16(b) actions).

**B.      The Fees Requested Are Also Appropriate Under The Criteria Established
          By The Third Circuit**

In evaluating fees in a common fund case, the Third Circuit has also recommended that

district courts be guided by the following criteria: "(1) the size of the fund created and the

number of persons benefitted; (2) the presence or absence of substantial objections by members

of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency

of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of

nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards

in similar cases."  *In re Cendant Corp.*, 264 F.3d 201, 283 (3d Cir. 2001).  The fee requested by

Plaintiffs' counsel is also appropriate based upon an application of these criteria.

16

1.      **Size of the Fund and the Number of Persons Benefitted and the Presence or Absence of Objections by Shareholders**

The fee and expenses requested is thirty percent of the funds recovered.  This is in line with "the custom honored contingent fee of 33 1/3% . . . ."  *In re: NASDAQ Market Makers Antitrust Litig.*, 187 F.R.D. 465, 485 (S.D.N.Y. 1998).  The settlement amount of $1,898,268 is far from a "megafund" which is generally considered to exist where a common fund totals more than $100 million, *see In re: Merry-Go-Round Enterprises, Inc.*, 244 B.R. 327, 342 (Bankr. Md. 2000), where a reduction in the percentage fee awarded may be appropriate.  *See, e.g., NASDAQ*, 187 F.R.D. at 486.  In addition, as noted above, to date no shareholder objections have been made to either the settlement or a fee and expense award of up to 30%.

2.      **The Quality of the Representation**

As noted in Section A above, AFT has considerable expertise in the area of Section 16(b). The firm's work in obtaining recoveries on behalf of issuers has been recognized and praised by courts and its experience and meaningful recovery in this action should likewise be reflected in Plaintiffs' fee award.  In addition, the Rosenthal firm has significant experience in representing shareholders in the Delaware courts and provided valuable assistance in this matter.

3.      **The Complexity and Duration of the Litigation**

The Section 16(b) Actions were brought over five years ago and throughout much of that time, the ongoing criminal, SEC and class action litigation against Defendants created substantial litigation hurdles.  Furthermore, the settlement of the Section 16(b) Actions was rendered exceedingly lengthy and complex by Defendants' ongoing negotiations with the SEC.  AFT also

17

overcame Defendants' respective motions to dismiss, which implicated complex and novel issues of fact and law, and engaged in formal discovery.

### 4. The Risk of Nonpayment

As discussed above, even if Plaintiffs were able to overcome the significant hurdles of establishing liability, Therrien's ability to withstand a $15.7 million judgment is uncertain. *See* Part I.E, *supra.*

### 5. The Time and Labor Expended By Counsel

This case involved a substantial effort beginning at its very inception. In total, AFT expended 1,113 hours in attorneys' time and $14,509.93 in expenses. *See* Ex. A (Time Report), Ex. B (Expense Report), Declaration of Ximena R. Skovron (filed concurrently herewith). The Rosenthal firm expended 66 hours of attorney time with a lodestar of $25,755 and $1,744 in expenses. *See* Ex. 1, Declaration of P. Bradford deLeeuw (filed concurrently herewith). The total lodestar for AFT alone is $579,334, which is slightly higher than Plaintiffs' requested fee and expense award of $569,480. Plaintiffs do not request a multiplier for the work that counsel has performed. In brief, the work performed included, among other things:

- Conducting a pre-filing investigation, which included an in-depth review and analysis of Defendants' SEC filings, and drafting a statutory demand letter and two complaints;

- Successfully briefing and attending oral argument in connection with Defendants' separate motions to dismiss, which raised discrete defenses and complex and novel issues of law and fact surrounding the treatment of the exercise of allegedly expired stock options under Section 16(b) and applicable case law;

- Negotiating the carve-out of the Section 16(b) Actions from the Class Action settlement;

- Drafting and serving discovery, including propounding discrete requests for document production and interrogatories to each Defendant, preparing written responses to Defendants' objections, and conferring with Defendants to resolve discovery disputes;

- Negotiating a protective order for confidential materials requested by Defendants;

- Reviewing and analyzing over thirty thousand pages of documents produced by Defendants, and the filings, transcripts and exhibits in the SEC and DOJ Actions;

- Drafting a mediation brief and attending mediation before Your Honor; and

- Negotiating a complex settlement over the course of almost two years, which was delayed by Therrien's ongoing settlement discussions with the SEC and Brooks' negotiations with its D&O insurer, as well as drafting settlement papers.

### 6.    Awards in Similar Cases

Here, the fee amount agreed to is comfortably within the type of fees awarded in this type of litigation under the percentage of recovery approach.  *See* Jacobs, *supra*, §3.10 (up to 49% of a recovery has been awarded as attorneys fees in Section 16(b) actions).  *See also* Part II.A, *supra*.

### C.    The Requested Award for Fees and Expenses is Also Fair and Reasonable Under the Lodestar Method of Calculation

In common fund cases, "the percentage-of-recovery method is generally favored because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006) (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005)).  The Third Circuit recommends, but does not require, that "district courts use the lodestar method to cross-check the

reasonableness of a percentage-of-recovery fee award." *AT&T*, 455 F.3d at 164.  The lodestar

method multiplies the number of hours counsel worked on a case by a reasonable hourly billing

rate for such services.  *Id.*  The cross-check is performed by dividing the proposed fee award by

the lodestar calculation, resulting in a lodestar multiplier.  *Id.*  The multiplier "is a device that

attempts to account for the contingent nature or risk involved in a particular case and the quality

of the attorneys' work."  *Id.* at 164 n.4.  Although it is common for courts to award multipliers in

similar actions, here, Plaintiffs' lodestar amount is higher than the requested fee and expense

award and they do not request a multiplier.  The total hours expended by AFT was 1,113, with a

lodestar amount for AFT of $579,334.  This lodestar amount was obtained using billing rates of

paralegals, associates, and partners of AFT ranging from $150 to $695.  Dividing Plaintiffs'

requested fee and expense award of $569,480 by the lodestar results in a multiplier of .98, which

is well within the acceptable range.  *See In re Prudential Ins. Co. of Am. Sales Practice Litig.*

*Agent Action*s, 148 F.3d 283, 341 (3d Cir. 1998) (lodestar "multiples ranging from one to four

are frequently awarded in common fund cases where the lodestar method is applied").  The

lodestar cross-check therefore supports the requested attorneys' fee and expense award.

## <u>CONCLUSION</u>

The settlement amount of $1,898,268 is fair, reasonable and adequate to Brooks.

Plaintiffs respectfully request that the Court approve the proposed settlement pursuant to the

terms set forth in the Stipulation and Agreement of Compromise, Settlement and Release and

enter the proposed Final Order and Judgment attached as Exhibit B thereto.  Plaintiffs also

request that the Court award Abraham, Fruchter & Twersky LLP attorneys' fees in the amount of

$569,480, inclusive of expenses.

Dated: April 26, 2011

**ROSENTHAL, MONHAIT & GODDESS, P.A.**

By: ___ */s/ Jeffrey Goddess* _____
       Jeffrey Goddess, Esq. (DE. Bar. No. 630)
       P. Bradford deLeeuw, Esq. (DE. Bar. No. 3569)
919 Market Street, Suite 1401
Wilmington, Delaware 19899
Telephone: (302) 656-4433

*Liaison Counsel for Plaintiffs Mark Levy and Aron Rosenberg*

**ABRAHAM, FRUCHTER & TWERSKY LLP**
Mitchell M.Z. Twersky, Esq. (*pro hac vice*)
Ximena R. Skovron, Esq. (*pro hac vice*)
One Pennsylvania Plaza, Suite 2805
New York, New York 10119
Telephone: (212) 279-5050

*Lead Counsel for Plaintiffs Mark Levy and Aron Rosenberg*

21